IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| RANDOLPH COUNTY, ALABAMA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:12-CV-886-WKW |
| | ) | [WO] |
| FEDERAL NATIONAL MORTGAGE | ) | |
| ASSOCIATION, FEDERAL HOME | ) | |
| LOAN MORTGAGE CORPORATION, | ) | |
| and FEDERAL HOUSING FINANCE | ) | |
| AGENCY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

In this putative class action, Plaintiff Randolph County argues that the Federal National Mortgage Association ("Fannie Mae"), the Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Federal Housing Finance Agency ("the Agency"), in its capacity as the conservator for Fannie and Freddie,[1] are liable to it and other Alabama counties for failure to pay the Alabama State tax on real estate transfers. Defendants claim they are statutorily exempt from paying the tax and moved for summary judgment in their favor. (Doc. # 27.) Plaintiff responded with a cross-motion for partial summary judgment. (Doc. # 43.) The motions are fully

---

[1] Congress combined several existing governmental agencies to form the Agency, which now acts as conservator for Fannie Mae and Freddie Mac. *See* 12 U.S.C. § 4617(b)(2)(B) (setting out the authority of the conservator).

briefed and ripe for adjudication.   (Docs. # 55, 56, 62–69.)   After careful

consideration of the parties' arguments and the relevant law, Defendants' motion is

due to be granted, and Plaintiff's motion is due to be denied.

## I.  JURISDICTION AND VENUE

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.  It also

has jurisdiction over claims against Freddie Mac pursuant to 12 U.S.C. § 1452(f)(2)

and over the state law claims pursuant to 28 U.S.C. § 1367.  The parties do not

contest personal jurisdiction or venue.

## II.  STANDARD OF REVIEW

To succeed on summary judgment, the movant must demonstrate "that there is

no genuine dispute as to any material fact and the movant is entitled to judgment as

a matter of law."  Fed. R. Civ. P. 56(a).  In evaluating a motion for summary

judgment, the court assesses whether trial is necessary.  *Matsushita Elec. Indus. Co.*

*v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Where facts are undisputed, the

court must only answer the legal question.

## III.  BACKGROUND

Fannie Mae and Freddie Mac, both private entities created by the federal

government, buy home loans from approved mortgage sellers, package them into

mortgage-backed securities, and then sell those securities.  *Montgomery Cnty.*

*Comm'n v. Fed. Housing Fin. Agency*, 2:12cv886-MHT, 2013 WL 1896256, at *2 (M.D. Ala. May 6, 2013). The institutions exist to promote home ownership by increasing funds available to financial institutions for residential mortgages. *Id.*

Meanwhile, Alabama imposes a tax on the transfer of real property. Ala. Code §§ 41-22-1–2 (the "Transfer Tax"). Alabama counties collect the Transfer Tax when a real-property transferee records the transfer with the county. The Transfer Tax is a tax collected for the privilege of transferring realty in Alabama. *Id.* at § 41-22-1(a). The parties agree that Defendants routinely record property transfers in Randolph and other Alabama counties.[2] Defendants, however, refuse to pay the Transfer Tax on the basis that they are exempt under federal law.

Virtually identical federal statutory exemptions exist for each Defendant. The statute applicable to Freddie Mac reads:

> The Corporation, including its franchise, activities, capital, reserves, surplus, and income, shall be exempt from all taxation now or hereafter imposed by any territory, dependency, or possession of the United States or by any State, county, municipality, or local taxing authority, except that any real property of the Corporation shall be subject to State, territorial, county, municipal, or local taxation to the same extent according to its value as other real property is taxed.

---

[2] "When a mortgage lender forecloses on a delinquent mortgage, it will often transfer title of the foreclosed property to Fannie Mae or Freddie Mac through a foreclosure deed or similar document. Fannie Mae or Freddie Mac, in turn, will record the foreclosure deed or other document with the government of the county in which the property sits, thereby perfecting the corporation's ownership of the property." *Montgomery Cnty. Comm'n*, 2013 WL 1896256, at *2.

12 U.S.C. § 1452(e); *see also* 12 U.S.C. §§ 1723a(c), 4617(j)(2) (stating nearly identical exemptions and exceptions for Fannie Mae and the Agency, respectively). In addition to the exemption of the entities from "all taxation," each statute contains an exception to the exemption for the taxation of real property, which local entities may tax "to the same extent . . . as other real property." 12 U.S.C. §§ 1452(e), 1723a(c), 4617(j)(2). Defendants argue that they are exempt as a matter of law by virtue of these statutes.[3] Plaintiff disagrees.

## IV. DISCUSSION

The federal statutory exemptions are two-part. First, they exempt Defendants from "all taxation," statutorily immunizing the entities from taxation to which they would otherwise be subject. Second, they establish an exception to that exemption for the taxation of real property, making Defendants liable for taxes on real property. The court will address each part of the statutory provisions in turn, and conclude by considering Plaintiff's constitutional arguments.

### A.    **The Transfer Tax falls within the ambit of the statutory exemptions**.

The "first step in interpreting a statute is to determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in

---

[3] Because the statutes differ only in respects not material to this suit, the court will analyze them together.

4

the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  So long as "all" means "[b]eing or representing the entire or total number, amount or quantity," American Heritage Dictionary 45 (5th ed. 2011), the statutes exempt Defendants from the Transfer Tax.  *See also* Webster's Third International Dictionary 54 (Philip Babcock Gove et al., eds., 1993) (defining "all" as "every member or individual component of").

> 1. *"All" means "all."*

Plaintiff argues that the Supreme Court altered the meaning of the term "all taxation" such that it covers only direct taxes, not excise taxes like the one here.  A direct tax is "a tax levied upon the property itself," while an excise tax is "levied upon the use or transfer of property even though it might be measured by the property's value." *United States v. Wells Fargo Bank*, 485 U.S. 351, 355 (1988).  In *Wells Fargo*, the Court interpreted the Housing Act of 1937, and concluded that "an exemption of property from all taxation had an understood meaning: *the property* was exempt from direct taxation, but certain privileges of ownership, such as the right to transfer the property, could be taxed." *Id.* (emphasis added).

The conclusion that "all taxation" meant "all direct taxation" was logical in *Wells Fargo*, where the statutory exemption applied to the property.  That exemption appeared in the Housing Act of 1937 and read, "[Project notes], including interest

thereon, . . . shall be exempt from all taxation now or hereafter imposed by the United States." *Id.* (alteration in original) (quoting § 5(e) of the Housing Act of 1937, codified as amended at 42 U.S.C. § 1437i(b)). Congress exempted the project notes – a form of property – from taxation, and only a direct tax is a tax on the property itself. Accordingly, the project notes were exempt from direct taxation but their owners remained subject to excise taxes on their transfer, including the estate tax at issue. *Id.*

The same conclusion would not be logical here, where the statutes exempt entities – not just certain property – from taxation. *See, e.g.,* 12 U.S.C. § 1452(e) ("The Corporation . . . shall be exempt from all taxation now or hereafter imposed."); *Cnty. of Oakland v. Fed. Housing Fin. Agency*, 716 F.3d 935, 943 (6th Cir. 2013) (distinguishing between exemptions of property like that in *Wells Fargo* and the statutory exemptions for Defendants); *Hertel v. Bank of Am.*, 897 F. Supp. 2d 579, 584 (W.D. Mich. 2012) (observing that the statute at issue in *Wells Fargo* "specified an exemption *only* for the property and not its owner or its transfer," unlike the statutory exemptions covering Defendants). "All taxation" for entities includes more than just direct taxation of the property they own. It also includes taxation on the privileges of ownership, including the Transfer Tax. *Montgomery Cnty. Comm'n,*

2013 WL 1896256, at *3 (finding that Alabama's Transfer Tax falls under the "all taxation" umbrella of the same statutory exemptions).

The Supreme Court of the United States's opinion in *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95 (1941), further supports this interpretation. There, the Court examined North Dakota's sales tax on real property. *Id.* at 99. That tax operated much like Alabama's Transfer Tax; both are taxes payable when one party sells real property to another. Section 26 of the Federal Farm Loan Act exempted "every Federal land bank . . . from Federal, State, municipal, and local taxation." Pub. L. No. 64-158, § 26, 39 Stat. 360, 380 (1916). The *Bismarck* Court distinguished this entity exemption from property exemptions. 314 U.S. at 100. The Court concluded that "the broad exemption accorded to 'every Federal land bank'" applied to the North Dakota sales tax and precluded North Dakota from collecting the sales tax from Federal land banks. *Id.* at 99 (quoting § 26). Likewise, the exemptions accorded to Defendants by name – not to their property or to mortgages they backed – covers all taxes for which they would otherwise be liable, direct or excise, including the Transfer Tax.

Plaintiff's attempt to distinguish the entities in *Bismarck*, federal instrumentalities, from Defendants, federally created private institutions, is unavailing. The Supreme Court grounded its ruling not on the federal character of

entities, but on statutory language. *Id.* ("The unqualified term 'taxation' used in section 26 clearly encompasses within its scope a sales tax such as the instant one, and this conclusion is confirmed by the structure of the section.").

Finally, the inclusion of the exception for property taxes in each statutory exemption further supports the conclusion that "all" means "all". The provisions' mandatory language "does not leave room for unmentioned exemptions." *Hertel*, 897 F. Supp. 2d at 582; *see also TRW Inc. v. Andrews*, 534 U.S. 19, 28 (2001) ("Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." (quotations omitted)).

### 2. *The Agency's exemption from penalties for unpaid taxes does not render the language of the "all taxation" exemption redundant.*

By law, the Agency "shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay any real property, personal property, probate, or recording tax or any recording or filing fees when due." 12 U.S.C. § 4617(j)(4). Plaintiff cites this provision to support its position that the "all taxation" language does not exempt Defendants from taxes like the Transfer Tax, arguing that no penalty would arise if the Agency were not subject to such taxes in the first place.

8

If this provision meant that the Agency shall not be liable for its own failure to pay real property taxes, it would indeed be illogical.  That is not what this provision means.  This provision protects the Agency in the event a non-exempt previous owner fails to pay taxes.  In such a case, the provision frees the Agency from liens and liabilities it might otherwise incur by holding the property.  *See In re Cnty. of Orange*, 262 F. 3d 1014, 1021 (9th Cir. 2001) (holding that a materially similar provision protected the Federal Deposit Insurance Corporation as receiver from penalties arising when earlier owners of its property defaulted on taxes on real property).  The court will give effect to the statute's distinction between "the Agency" and "any person."

### B.     The exception to the exemption for taxation of real property does not apply to the Transfer Tax.

The Transfer Tax, which both parties agree is an excise tax (Docs. # 29 at 7, 43-1 at 4–5), does not fall under the real property exception to the exemption language.  It is a tax levied not on the property itself, but on a transferee after the transfer of  property for the privilege of recording instruments transferring that property.  Ala. Code § 40-22-1; *Montgomery Cnty. Comm'n*, 2013 WL 1896256, at *1.  *Cf. CSX Transp., Inc. v. Ala. Dep't of Revenue*, ___ U.S. ____, 131 S. Ct. 1101, 1107 (2011) (describing "Alabama's sales and use tax" as an "excise tax").  It is not

a direct tax on the property, even if it is determined in part by the property's value. *See Wells Fargo*, 485 U.S. at 355 (remarking that excise taxes may be determined by a property's value).

Plaintiff urges the court to interpret the exception clause "broadly to include all taxes relating to real property," including, apparently, excise taxes. (Doc. # 43-2 at 44.) The court rejects the invitation. The plain language of the statute makes Defendants' real property subject to taxation to the same extent as other property, but it does not make Defendants liable for taxes "relating to" real property. The Transfer Tax "cannot be said to be a tax directly on the property sold because it is only incurred when the property is transferred to another." *Hertel*, 897 F. Supp. 2d at 586; *see also Montgomery Cnty. Comm'n*, 2013 WL 1896256, at *4 (finding that the Transfer Tax did not fall under the real property exception to the statutory exemption from all taxation).

### C. Plaintiff's constitutional arguments fail.

Contrary to Plaintiff's insistence otherwise, Congress has the power to exempt Defendants statutorily, without resort to the constitutional tax immunity afforded to federal instrumentalities.[4] *Montgomery Cnty. Comm'n*, 2013 WL 1896256, at *4

---

[4] Because the court finds Congress had the authority to exempt Defendants from taxation statutorily, it will not decide whether Defendants are federal instrumentalities who are constitutionally immune from taxation.

(finding that Congress may "afford, through statute, tax immunity to private corporations the federal government creates, like Fannie Mae and Freddie Mac").  In fact, the Supreme Court has indicated that Congress may exempt private, non-federal entities from state and local taxation, even where Congress did not – as it did here – create those entities.

The Supreme Court has, for example, approved of statutory exemptions from state and local taxation for national banks.  *First Agr. Nat'l Bank of Berkshire Cnty. v. State Tax Comm'n*, 392 U.S. 339, 341 (1968) ("Because of pertinent congressional legislation in the banking field, we find it unnecessary to reach the constitutional question of whether today national banks should be considered nontaxable as federal instrumentalities.").  Additionally, the Supreme Court has left room for Congress to exempt private governmental contractors from state and local taxation.  *See United States v. New Mexico*, 455 U.S. 720, 737 (1982) ("If the immunity of federal contractors is to be expanded beyond its narrow constitutional limits, it is Congress that must take responsibility for the decision . . . .").  And when the Court denied constitutional immunity from nondiscriminatory state taxation to a lessee of the government, it emphasized that its holding did not extend to statutory exemptions for such lessees. *United States v. City of Detroit*, 355 U.S. 466, 475 (1958) ("Of course

this is not to say that Congress, acting within the proper scope of its power, cannot confer immunity by statute where it does not exist constitutionally.").

Defendants exist to ease access to and stabilize the market for secondary residential mortgages.  12 U.S.C. §§ 1716, 4501.  The Commerce Clause permits Congress to regulate activities that have a substantial relation to interstate commerce, and the availability of capital in the national mortgage market bears such a substantial relationship.  U.S. Const. art. I, § 8, cl. 3; *United States v. Lopez*, 514 U.S. 549, 558–59 (1995).  The exemptions allow Defendants to allocate that capital unencumbered by state taxes, thereby furthering the governmental objectives the entities exist to advance.  *See Carson v. Roane-Anderson Co.*, 342 U.S. 232, 234 (1952) (holding that Congress's power "to create tax immunities does not turn on the nature of the agency doing the work of the government," but "stems from the power to preserve and protect functions validly authorized").  The statutory exemptions rest on solid constitutional bases.

**D.    Other courts have reached the same result when confronted with similar litigation**.

Although the Eleventh Circuit has not addressed Defendants' federal statutory exemption, in the past two years, more than a dozen local government plaintiffs have brought iterations of this suit in their respective federal jurisdictions.  Virtually every

other court to encounter these cases has reached the same conclusion – that Defendants are exempt from state and local excise taxes on the transfer and recording of real property.[5]  The United States Court of Appeals for the Sixth Circuit recently reversed the decision of the one district court that reached the conclusion Plaintiff advocates.  *See Cnty. of Oakland*, 716 F.3d at 935, *rev'g Oakland Cnty. v. Fed. Housing Fin. Agency*, 871 F. Supp. 2d 662 (E.D. Mich. 2012).  In granting summary judgment in favor of Defendants, this court is in good company.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' Motion for Summary Judgment (Doc. # 27) is GRANTED.  It is further ORDERED that Plaintiff's Motion for Partial Summary Judgment (Doc. # 43) is DENIED.

A separate judgment in favor of Defendants shall issue.

---

[5] *E.g., Milwaukee Cnty. v. Fed. Nat'l Mortg. Ass'n*, No. 12-C-0732, 2013 WL 3490899 (E.D. Wis. July 10, 2013); *City of Spokane v. Fed. Nat'l Mortg. Ass'n*, No. CV-13-0020, 2013 WL 3288413 (E.D. Wash. June 28, 2013); *McNulty v. Fed. Housing Fin. Agency*, __ F. Supp. 2d ____, 2013 WL 3147641 (M.D. Pa. June 19, 2013); *Doggett v. Fed. Housing Fin. Agency*, No. 2:12-cv-553, 2013 WL 2920388 (M.D. Fla. June 13, 2013); *Athens-Clarke Cnty. Unified Gov't v. Fed. Housing Fin. Agency*, __ F. Supp. 2d ____, 2013 WL 2102922 (M.D. Ga. May 14, 2013); *Montgomery Cnty. v. Fed. Nat'l Mortg. Ass'n*, No. DKC 13-66, 2013 WL 1832370 (D. Md. Apr. 30, 2013); *Montgomery Cnty. Comm'n*, 2013 WL 1896256; *Hennepin Cnty. v. Fed. Nat'l Mortg. Ass'n*, __ F. Supp. 2d ____, 2013 WL 1235589 (D. Minn. Mar. 27, 2013); *Vadnais v. Fed. Nat'l Mortg. Ass'n*, No. 12-1598, 2013 WL 1249224 (D. Minn. Mar. 27, 2013); *Delaware Cnty. v. Fed. Housing Fin. Agency*, No. 12-4554, 2013 WL 1234221 (E.D. Pa. Mar. 26, 2013); *Fannie Mae v. Hamer*, No. 12-C-50230, 2013 WL 591979 (N.D. Ill. Feb. 13, 2013); *Nicolai v. Fed. Housing Fin. Agency*, __ F. Supp. 2d ____, 2013 WL 899967 (M.D. Fla. Feb. 12, 2013); *Hertel*, 897 F. Supp. 2d at 579; *Hager v. Fed. Nat'l Mortg. Ass'n*, 882 F. Supp. 2d 107 (D.D.C. 2012).

DONE this 31st day of July, 2013.

                                 /s/ W. Keith Watkins
                       CHIEF UNITED STATES DISTRICT JUDGE